# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MABROUK CHAARA,

      Plaintiff,

vs.                                        No. CIV 05-278 JB/RLP

INTEL CORPORATION, DAVID
BAGLEE, BRIAN RASHAP, and
TAMMY WASH,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Response to Defendants' Notice of Removal and Motion for Remand, filed April 11, 2005 (Doc 4). The Court held an evidentiary hearing on this motion on June 2, 2005. The primary issues are: (i) whether 28 U.S.C. § 1447(d) bars the Court from reviewing a prior order, issued by the Honorable Bruce Black, United States District Judge, remanding Chaara's claims from his first lawsuit back to state court; and (ii) whether Plaintiff Mabrouk Chaara is domiciled in Colorado so that the parties are diverse in citizenship. Because the Court concludes that § 1447(d) precludes the Court from reconsidering Judge Black's order, the Court will remand the claims from his first lawsuit to state court. The Court will otherwise deny the motion to remand because it concludes that the Defendants have met their burden of proving that Chaara was a Colorado resident when he filed his second lawsuit.

## FACTUAL BACKGROUND

Chaara began working for Defendant Intel Corporation in May 1996. See Affidavit of Mabrouk Chaara ¶ 1, at 1 (executed July 1, 2004)(hereinafter "Chaara Aff."). From May 1996 until

February 17, 2004, Chaara worked at an Intel plant located in Rio Rancho, New Mexico.  See id. ¶ 2, at 1.  Shortly after he began working at the Rio Rancho facility, he bought a house at 7405 Riverton Drive NW, Albuquerque, New Mexico.  See id. ¶ 13, at 3; Transcript of Hearing at 5:8-12 (taken June 2, 2005).[1]

On February 17, 2004, Chaara moved to Colorado Springs, Colorado, to work at another Intel location.  See Transcript of Hearing at 7:3-13.  Before his move, in January 2004, Intel initiated its relocation procedures in anticipation of Chaara's forthcoming move to Colorado Springs.  See Declaration of Evan C. Wiggins ¶ 3, at 2 (hereinafter "Wiggins Decl.").  On February 3, 2004, Chaara selected "Option 2" as his reimbursement package for moving expenses based on the number of family members moving with him.  See id.  On February 29, 2004, Chaara signed a Relocation Agreement, indicating that at least three family members would be joining him in Colorado.  See id. ¶ 4, at 2.

Chaara alleges that, because of the severity of the discrimination and the hostile work environment he suffered at the Rio Rancho plant, he accepted the Colorado Springs position.  See Affidavit of Mabrouk Chaara ¶ 8, at 2 (executed July 1, 2004)(hereinafter "Chaara Aff.").  Chaara contends that, but for the Defendants' acts of discrimination and retaliation, he would not have moved to Colorado.  See id.

Initially, Chaara moved to Colorado by himself.  See Transcript of Hearing at 7:7-13.  Intel needed him there immediately, but he could not move his children right away because they were in school.  See id.  Chaara explained that he left New Mexico to escape discriminatory treatment by Intel

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

employees at the Rio Rancho plant.  See id. at 7:17-25.  His new position is a regular, full-time position for an indefinite period, although Chaara stated that he was only required by contract with Intel to remain in Colorado for one year.  See Affidavit of Patrick J. Duffy ¶ 3, at 1 (executed March 10, 2005)("Duffy Aff."); Chaara Aff. ¶ 12, at 2.

On July 12, 2004, Chaara signed a Uniform Residential Loan Application to buy a new house at 1933 West Montebello Drive, Colorado Springs, CO 80318.  See Uniform Residential Loan Application (executed July 12, 2004).  Chaara checked the box on the Application that indicated the house would be his primary residence.  See id. at 1.  Chaara stated on his Application that he has sold his Albuquerque house.  See id. at 3.  Chaara also stated on his application that he was not a party to a lawsuit, even though he had filed suit against the Defendants on April 16, 2004.  See id.

On July 28, 2004, Chaara filled up a moving van with his possessions in anticipation of relocating to Colorado Springs, a day before he testified in front of Judge Black.  See Transcript of Hearing at 44:4-7.  On July 30, 2004, the day after the hearing, Chaara's partner, Patricia Michaud, and his two youngest children moved to Colorado to live with him.  See id. at 10:15-21, 13:9-11.  He also completed the purchase of the Colorado Springs house, for use as his primary residence, as of that date.  See id. at 10:15-21, 13:9-11, 17:13-17.  Chaara moved most, but not all, of his possessions to Colorado, leaving some in New Mexico.  See id. at 17:18-21.  His children attended school in Colorado in the 2004-05 school year.  See id. at 13:6-8.  Michaud, the mother of Chaara's children, still lives with him in Colorado.  See id. at 13:9-13.  His oldest child lives in his house in Albuquerque while she attends the University of New Mexico.  See id. at 10:2-4.

On August 10, 2004, Chaara testified before the New Mexico Human Rights Commission that he was planning to leave New Mexico because of the alleged discriminatory conditions he was

suffering at the Rio Rancho plant.  <u>See</u> <u>id.</u> at 29:12-17.  Specifically, Chaara stated: "We're planning on leaving this place [Albuquerque].  We have to move to Colorado Springs, in the hope that I can escape. . . ."  Transcript of Proceedings Before the New Mexico Human Rights Commission at 122:8-13 (taken August 10, 2004).

On February 8, 2005, Chaara sent an email to Jeffrey Murray at Intel, asking for an extension of six months to sell his house.  <u>See</u> Email String at 1 (attached as Exhibit A to the June 2, 2005, hearing).  Chaara told Murray in the email that an extension "will give me the summer to be able to sell it [the Albuquerque house]."  <u>Id.</u>

Chaara's primary care physician is in Colorado.  <u>See</u> <u>id.</u> at 13:15-20.  Chaara has paid property taxes on his house in Colorado Springs since closing on the house.  <u>See</u> <u>id.</u> at 13:23-14:7. He has telephone and cable service at his Colorado Springs house.  <u>See</u> <u>id.</u> at 14:18-15:3.

Intel is incorporated under the laws of Delaware and has its principal place of business in California.  <u>See</u> Duffy Aff. ¶ 2, at 1.  Defendants David Baglee, Brian Rashap, and Tammy Wash are citizens of New Mexico.  <u>See</u> <u>Chaara II</u> Complaint ¶¶ 3-5, at 1-2.

## PROCEDURAL BACKGROUND

This matter is a tale of two lawsuits.  On April 21, 2003, Chaara filed a Charge of Discrimination against the Defendants with the New Mexico Human Rights Division ("NMHRD"), alleging discrimination based on national origin, religion, and gender, and retaliation.  <u>See</u> Chaara Aff. ¶ 6, at 1.  While finding probable cause on his national origin discrimination and retaliation claims, the NMHRD issued an Order of Non-Determination on Chaara's religion and gender claims.  <u>See</u> <u>id.</u> ¶ 7, at 2.  On April 16, 2004, Chaara filed a Complaint in the Thirteenth Judicial District Court for New Mexico in <u>Chaara v. Intel Corporation</u>, No. D-1329-CV-04-00376 (Dist. Ct. N.M.)("<u>Chaara</u>

I"). The Chaara I Complaint sought relief on Chaara's gender claim, at the same time as he pursued his national origin discrimination and retaliation claims with the New Mexico Human Rights Commission. See Chaara I Complaint ¶¶ 33-37, at 4-5. Chaara I also set forth claims for breach of an employment contract, breach of the covenant of good faith and fair dealing, and defamation. See id. ¶¶ 38-49, at 25-27. In response, the Defendants removed Chaara I to the United States District Court for the District of New Mexico on the basis of diversity of citizenship between the parties. See Chaara I Notice of Removal at 1-4, filed June 2, 2004 (Doc. 1 in Case No. 04cv0615).[2] The Defendants asserted that Chaara is a citizen of Colorado, yet Intel is a Delaware corporation with its principal place of business in California, and the other Defendants are citizens of New Mexico. See id. at 2.

Judge Black, who presided over Chaara I during its brief life in federal court, scheduled, sua sponte, an evidentiary hearing to determine the existence of complete diversity. See Order at 1, filed June 17, 2004 (Doc. 3 in Case No. 04cv0615). Following the hearing, held on June 23 and July 29, 2004, Judge Black remanded Chaara I back to New Mexico State District Court, based on his finding that Chaara was domiciled in New Mexico when he filed the Chaara I Complaint. See Order of Remand at 1, filed August 20, 2004 (Doc. 15 in Case No. 04cv0615).

Subsequently, the New Mexico Human Rights Commission determined that Chaara had failed to establish his national origin discrimination and retaliation claims, leading him to file a second complaint in the Thirteenth Judicial District Court for New Mexico, thereby initiating Chaara v. Intel Corporation, No. D-1329-CV-05-00154 (Dist. Ct. N.M.)("Chaara II"), on February 10, 2005. See

---

[2] Unless otherwise stated, all document numbers refer to documents filed in this case, Case No. 05cv0278.

Chaara II Complaint ¶ 22, at 4.  In addition to alleging national origin discrimination and retaliation, Chaara I also set forth claims for breach of an employment contract, breach of the covenant of good faith and fair dealing, and defamation.  See id. ¶¶ 25-53, at 5-10.  The Defendants in Chaara II are the same as those listed in Chaara I.  Compare Chaara I Complaint (Caption) at 1, with Chaara II Complaint (Caption) at 1.

The parties in both cases stipulated to a consolidation of both actions in state court.  See Stipulated Order of Consolidation at 1, filed March 10, 2005.  The New Mexico State District Court found that the two cases "involve common questions of both law and fact" and consolidated the actions, pursuant to rule 1-042(A) of the New Mexico Rules of Civil Procedure, "for any and all purposes."  Id.  The Stipulated Order of Consolidation explained that both cases would be captioned "Mabrouk Chaara, Plaintiff, vs. Intel Corporation, David Baglee, Brian Rashap, and Tammy Wash: No. D-1329-CV-04-00376 and No. D-1329-CV-05-00154."  Id.

On March 14, 2005, the Defendants removed the consolidated action to this District on the basis of diversity of citizenship.  Once again, the Defendants alleged that Chaara is a citizen of Colorado, and that none of the Defendants are citizens of that state.  See Notice of Removal at 2-3, filed March 14, 2005 (Doc. 1).

Chaara filed a Response to Defendants' Notice of Removal and Motion for Remand ("Motion to Remand") on April 11, 2005.  Chaara argued that nothing had changed since Judge Black issued his order remanding Chaara I to state court, except that Chaara's partner had moved to Colorado with him.  See Motion to Remand at 2.  According to Chaara, this new fact should not lead this Court to a different conclusion than Judge Black's because Judge Black allegedly knew that Chaara "would have to move his family due to the expense of maintaining two households."  Id.  Otherwise, Chaara

still maintains a residence in New Mexico; his vehicle is still registered in New Mexico; he still has a New Mexico bank account; and he still considers New Mexico to be his permanent home.  See id. Chaara believes that these facts show that he remains a citizen of New Mexico and that removal was therefore improper.  See id. at 2-3.

Also, Chaara stated in an affidavit attached to the Motion to Remand that he could not afford to maintain two residences, one in Colorado and one in New Mexico.  See Chaara Aff. ¶ 11, at 2. Chaara indicated that he had no choice but to eventually move his family to Colorado.  See id. Chaara stated that remaining apart from his family was personally and emotionally difficult.  See id.

The Defendants submitted a reply brief to support removal and a supplemental reply brief a month later.  The Defendants argue that Chaara was a citizen of Colorado at the time he filed Chaara II because he had lived there since February 2004.  See Defendants' Reply Brief in Support of Removal at 5, filed April 20, 2005 (Doc. 5).  Also, the Defendants point out that Chaara's partner and minor children had also moved to Colorado, and Chaara had stayed at the Intel location in Colorado longer than the year required by his contract.  See id.  Finally, the Defendants assert that Chaara's alleged continued ties to New Mexico indicates a mere "floating intention" to return.  See id. at 6.

Next, the Defendants contend that the New Mexico State District Court's consolidation of Chaara I and II merged the separate actions into a single suit.  See id. at 7.  Given that complete diversity existed when Chaara II was filed, the Defendants maintain, the consolidated case is also removable.  See id. at 7-8.  In the alternative, the Defendants argue that Chaara's voluntary change of residence, subsequent to the filing of his suit, renders Chaara I and II removable under 28 U.S.C. § 1446(b), even if it was not originally removable.  See id. at 8-10.

-7-

The Court held an evidentiary hearing on Chaara's Motion to Remand on June 2, 2005. Chaara testified at the hearing that he had contacted Intel's human resources legal attorney approximately a month before the hearing about moving back to Albuquerque.  See Transcript of Hearing at 9:11-19.  Chaara told the Court that he still owns his Albuquerque house, which his daughter uses while she attends the University of New Mexico.  See id. at 10:2-4.  He still possesses a valid New Mexico driver's license and a New Mexico bank account, into which Intel directly deposits his paycheck.  See id. at 10:5-14.  Chaara told the Court that his "intentions are to go back" to New Mexico, and that he has "definite plans" to return to New Mexico.  Id. at 15:4-16:18.  He explained that he checks every day to see if there are any positions he could take in New Mexico.  See id.  He described himself as "ready to go back."  Id. at 15:16-17.

Chaara told the Court that he has not listed his Albuquerque house for sale.  See id. at 23:25-24:2.  Three realtors made an offer to buy his house, but Chaara rejected their offer because they wanted to buy it for $50,000 less than its market value.  See id. at 24:2-8.  He told the realtors that he intended to do some repairs to the house, but now he does not know if he will sell it because he is "actively looking to go back" to Albuquerque.  Id. at 24:11-17.

Chaara stated that he does not know why the Uniform Residential Loan Application indicated that he sold his Albuquerque house.  See id. at 18:25-19:10.  Chaara testified that he told the mortgage company that he had not sold the house.  See id.  He does not have an explanation why the Application identifies his Albuquerque house as sold.  See id. at 19:17-21.  He also does not recall indicating on the Application that he was not a party to a lawsuit, although he explained that he might have told the lender that he was a plaintiff in a suit, and the lender was really only concerned with whether he was a defendant in a suit.  See id. at 19:22-20:10.

Chaara testified that he received $5300 from Intel, paid directly to Wells Fargo, to pay his closing costs.  See id. at 20:11-21:23.  Chaara affirmed that he received a "dual housing allowance," but that someone from Intel told him that selling his Albuquerque house was not a requirement for receiving that payment option.  See id. at 22:2-23:9.  He disagrees that a condition of the dual housing allowance was that he must sell his Albuquerque residence.  See id. at 24:18-25:3.

When asked about the email he sent to Murray asking for an extension so that he could sell his house, Chaara stated: "And I just testified that based on the conditions that I'm experiencing [in Colorado Springs] and the desire to go back, I don't know if I would. . . .  It was not my intention to commit to a sale.  It was more to give me more time to think about it and decide what I'm going to do."  Transcript of Hearing 27:7-19.  He explained further that he made the request back in February 2005 and that he is "currently . . . actively looking into going back."  Id. at 27:20-23.  Chaara conceded that he does not have a definite return date for when he will move back to Albuquerque.  See id. at 27:24-28:2.

The Defendants also called Evan Wiggins to testify at the hearing.  He is a Relocation Transaction Manager for Intel.  See id. at 30:23-23.  Wiggins testified that Chaara signed a relocation agreement on January 29, 2004.  See id. at 31:22-32:5.  Wiggins explained that Intel paid Chaara based on the number of dependents who were moving with him to a new primary residence.  See id. at 32:25-33:13.  Wiggins told the Court that Chaara had received $3300 as part of the dual housing program and that a requirement of dual housing assistance is that the recipient sell his old house.  See id. at 37:9-38:17.  Chaara has not offered to reimburse Intel even though he has not sold his house.  See id. at 44:11-14.  Also, the guidelines governing relocation expenses are sent to employees when Intel authorizes their transfer, and they can also be obtained through Intel's intranet system.  See id.

at 47:13-17.

Chaara began his argument by noting that the events giving rise to the claims in <u>Chaara I</u> and <u>II</u> arose while Chaara lived in New Mexico.  <u>See id.</u> at 49:8-12.  Chaara argued that, when he filed <u>Chaara I</u>, he had not formed an intention to make Colorado his permanent home and that he had only moved there to escape retaliation by the Defendants.  <u>See id.</u> at 49:15-19, 50:13-16.  Furthermore, Chaara asserted that he has always considered New Mexico to be his permanent home.  <u>See id.</u> at 50:2-6.  As for the consolidation of the two cases, Chaara explained that its purpose was to provide for a more efficient disposition of both cases, and that, under the rules of the Thirteenth Judicial District, a consolidated case takes the case number of the first-filed suit.  <u>See id.</u> at 50:22-51:8.  Chaara urged the Court to leave undisturbed Judge Black's ruling remanding <u>Chaara I</u> to state court as the "law of the case."  <u>Id.</u> at 51:8-10.  Finally, Chaara again highlighted that he still owns a home in Albuquerque, he retains possessions in that city, he has a New Mexico bank account and driver's license, and he returns to Albuquerque regularly.  <u>See id.</u> at 51:22-52:2.

The Defendants told the Court that diversity should be measured at the time when the action is filed, and that Chaara had moved to Colorado before the first lawsuit was filed in April 2004.  <u>See id.</u> at 52:18-23.  The Defendants emphasized that Chaara, before filing <u>Chaara II</u>, had moved his family and possessions to Colorado, purchased a new home in Colorado to serve as his "primary residence," accepted money from Intel for the sale of his Albuquerque house, and expressed to the NMHRD that he planned on leaving New Mexico.  <u>Id.</u> at 53:5-13.  According to the Defendants, these facts show that Chaara had formed the intent to remain in Colorado by the time he filed <u>Chaara II</u>.  <u>See id.</u> at 54:5-12.

In rebuttal, Chaara reiterated that the reason he moved to Colorado at all was because of the

Defendants' alleged unlawful acts, and that the Defendants should not be allowed to benefit from breaking the law by thereby removing to federal court.  See id. at 55:1-13.  Chaara also said that Judge Black's remand order in Chaara I controlled the jurisdictional issue in the consolidated case because the consolidated case took Chaara I's case number.  See id. at 55:14-20.

## LAW REGARDING REMOVAL

Under 28 U.S.C. § 1332(a), a federal district court possesses subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000. See Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000); 28 U.S.C. § 1332(a).  Diversity between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996); Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).  If a civil action filed in state court satisfies the requirements for diversity subject-matter jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings Ltd. Pshp., 194 F.3d 1072, 1076 (10th Cir. 1999)("'When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court. . . .'")(quoting Caterpillar Inc. v. Lewis, 519 U.S. at 68).  The plaintiff may thereafter attack removal by filing a motion in federal district court, pursuant to 28 U.S.C. § 1447(c), to remand the case back to state court.[3]  See Caterpillar Inc. v.

---

[3] 28 U.S.C. § 1447(c) mandates that "[a] motion to remand the case [from federal court to state court] on the basis of any defect other than lack of subject[-]matter jurisdiction must be made within 30 days after the filing of the notice of removal."  The Plaintiffs' motion to remand does not fall within the 30-day requirement of section 1447(c) because it is based on lack of subject-matter jurisdiction, namely lack of diversity jurisdiction.  See Motion to Remand at 3.  See also Caterpillar Inc. v. Lewis, 519 U.S. at 69 ("This 30-day limit [in section 1447(c)] does not apply, however, to jurisdictional defects.").

Lewis, 519 U.S. at 69; Kennedy v. Lubar, 273 F.3d 1293, 1297 (10th Cir. 2001)("Section 1447(c)

specifically allows district courts to order remand if there has been a defect in removal procedure, or

if it determines, at any time prior to final judgment, that it lacks subject[-] matter jurisdiction."

(internal quotations omitted)); 28 U.S.C. § 1447(c).

"It is well-established that statutes conferring jurisdiction upon the federal courts, and

particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited

tribunals." Pritchett v. Office Depot, Inc., 404 F.3d 1232, 1235 (10th Cir. 2005)(citing Shamrock

Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941), and United States ex rel. King v. Hillcrest

Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).   "[A]ll doubts are to be resolved against

removal."   Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).   "The burden of

establishing subject-matter jurisdiction is on the party asserting jurisdiction."   Montoya v. Chao, 296

F.3d 952, 955 (10th Cir. 2002).

## LAW REGARDING REVIEW OF REMAND ORDERS

28 U.S.C. § 1447(d) provides:

An order remanding a case to the State court from which it was removed is not
reviewable on appeal or otherwise, except that an order remanding a case to the State
court from which it was removed pursuant to section 1443 of this title shall be
reviewable by appeal or otherwise.[4]

---

[4] Section 1443 provides:

Any of the following civil actions or criminal prosecutions, commenced in a State
court may be removed by the defendant to the district court of the United States for
the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a
right under any law providing for the equal civil rights of citizens of the United States,
or of all persons within the jurisdiction thereof; (2) For any act under color of
authority derived from any law providing for equal rights, or for refusing to do any

The Tenth Circuit has characterized § 1447(d) "a strong statutory limitation on appellate review"

applying "only to remands based on 28 U.S.C. § 1447(c)." Kennedy v. Lubar, 273 F.3d at 1297

(citations omitted).  If a district court remands a case to state court on either of the two grounds

provided in § 1447(c), defect in removal procedure or lack of subject[-]matter jurisdiction, then  "§

1447(d) absolutely prohibits appellate review of the order, and [the Tenth Circuit] adhere[s] firmly

to this prohibition even where [it] believe[s] that the district court was plainly incorrect." Id. (citing

Archuleta v. Lacuesta, 131 F.3d 1359, 1363 (10th Cir. 1997)).

While the Tenth Circuit has not yet ruled on whether § 1447(d)'s prohibition of review of

remand orders is confined to merely appellate review, other Circuits have interpreted § 1447(d) to

foreclose a district court's reconsideration of its own remand order.  The United States Court of

Appeals for the Eleventh Circuit has concluded that § 1447(d)'s provision of "nonreviewability

extends to the power of a district court to reconsider its own remand order." First Union Nat'l Bank

v. Hall, 123 F.3d 1374, 1377 (11th Cir. 1997)(citations omitted).  The United States Court of

Appeals for the Fourth Circuit remarked that "[i]ndisputably, 'otherwise' in § 1447(d) includes

reconsideration by the district court." In re Lowe, 102 F.3d 731, 734 (4th Cir. 1996)(citations

omitted).  See also Three J Farms v. Alton Box Bd. Co., 609 F.2d 112, 115 (4th Cir. 1979)

("Unquestionably, [§ 1447(d)] not only forecloses appellate review, but also bars reconsideration of

such an order by the district court.").  Similarly, the United States Court of Appeals for the First

Circuit has ruled that

> there is no more reason for a district court being able to review its own decision, and
> revoke the remand, than for an appellate court requiring it to do so. Both are
> foreclosed; nothing could be more inclusive than the phrase "on appeal or otherwise."

act on the ground that it would be inconsistent with such law.

The district court has one shot, right or wrong.

In re La Providencia Dev. Corp., 406 F.2d 251, 252-53 (1st Cir. 1969).  The First Circuit also

explained the rationale behind this strict rule of nonreviewability:

> Removal in diversity cases, to the prejudice of state court jurisdiction, is a privilege
> to be strictly construed, and the state court proceedings are to be interfered with once,
> at most. This is not only in the interest of judicial economy, but out of respect for the
> state court and in recognition of principles of comity. The action must not ricochet
> back and forth depending upon the most recent determination of a federal court.

Id. at 252.  Finally, two Districts in the Tenth Circuit – the Districts of Kansas and Colorado – have

also found that they cannot review their own remand orders.  See Maggio Enters. v. Hartford Cas.

Ins. Co., 132 F. Supp. 2d 930, 931 (D. Colo. 2001)("Because a remand order deprives the district

court of jurisdiction, the district court may not vacate or reconsider its order of remand." (citations

omitted)); Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 67 F. Supp. 2d 1242, 1245 (D.

Kan. 1999)("The broad language of Section 1447(d) clearly prohibits review of remand orders under

Section 1447(c), and a motion for reconsideration is a form of review." (citations omitted)).

## LAW ON CONSOLIDATION

Rule 42(a) of the Federal Rules of Civil Procedure provides that,

> [w]hen actions involving a common question of law or fact are pending before the
> court, it may order a joint hearing or trial of any or all the matters in issue in the
> actions; it may order all the actions consolidated; and it may make such orders
> concerning proceedings therein as may tend to avoid unnecessary costs or delay.

As the United States Court of Appeals for the Sixth Circuit has recognized,

> [a] consolidation of separate actions for purposes of trial does not merge the
> independent actions into one suit. . . . Consolidation is permitted as a matter of
> convenience and economy in administration, but does not merge the suits into a single
> cause, or change the rights of the parties or make those who are parties in one suit
> parties in another.

-14-

Stacey v. Charles J. Rogers, Inc., 756 F.2d 440, 442 (6th Cir. 1985)(internal quotations and citations omitted). The United States Court of Appeals for the Fifth Circuit has likewise found that "consolidation does not cause one civil action to emerge from two; the actions do not lose their separate identity; the parties to one action do not become parties to the other." McKenzie v. United States, 678 F.2d 571, 574 (5th Cir. 1982)(citation omitted). The United States Court of Appeals for the Third Circuit has a similar rule. See Cella v. Togum Constructeur Ensemleier En Industrie Alimentaire, 173 F.3d 909, 912 (3d Cir. 1999)("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." (internal quotations and citations omitted)). In fact, almost all cases on the effects of consolidation state that consolidated actions retain their separate character. See Schnabel v. Lui, 302 F.3d 1023, 1035 (9th Cir. 2002)(citations omitted)("[T]he majority of courts have held that consolidated actions retain their separate character.").[5]

_____

[5] In their treatise, Professors Wright and Miller cite only one case, from the District of Alaska and decided in 1955, that holds that consolidation merges two separate suits into a single action. See Roden v. Empire Printing Co., 135 F. Supp. 665, 667 (D. Alaska 1955); 9 Wright & Miller, Federal Practice and Procedure § 2382 n.9. While federal courts are nearly unanimous on the effects of consolidation, several circuits have recognized narrow exceptions to the general rule. The United States Courts of Appeals for the Fifth and Seventh Circuits examine, on a case-by-case basis, whether consolidated actions retain their separate character for rule 54(b) purposes. See Sandwiches, Inc. v. Wendy's International, Inc., 822 F.2d 707, 709-10 (7th Cir. 1987); Ringwald v. Harris, 675 F.2d 768, 771 (5th Cir. 1982). Also, the United States Court of Appeals for the First Circuit treats consolidated cases as a single unit for res judicata purposes; a final judgment in one case cannot be used as res judicata in the other case. See Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 181-82 (1st Cir. 1999).

The Court does not believe that these exceptions apply in situations like this case, where the Court must decide the presence of subject-matter jurisdiction over a consolidated case. As the Tenth Circuit explained, a party should not be allowed to evade the fundamental requirement of subject-matter jurisdiction by combining, through consolidation, a jurisdictionally proper suit with a

The Tenth Circuit has addressed the effect of consolidation on a district court's jurisdictional analysis. Referencing Fifth Circuit law, the Tenth Circuit explained that "[t]he Fifth Circuit treats consolidated cases as separate when determining whether the district court had jurisdiction to entertain the suits. We assume all circuits would hold similarly that no suit filed independently could escape the jurisdiction requirements of federal question or diversity because it was consolidated with another after filing." See United States v. Tippett, 975 F.2d 713, 717 (10th Cir. 1992)(citations omitted).

Under the New Mexico Rules of Civil Procedure, when actions pending before the court share common issues of law or fact, the state court can consolidate the actions. Rule 1-042A NMRA 2005, which is identical to rule 42(a) of the Federal Rules of Civil Procedure, states:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

New Mexico courts have recognized that, when a New Mexico Rule of Civil Procedure is substantially similar to a Federal Rule of Civil Procedure, federal cases interpreting the Federal Rules are persuasive in interpreting the New Mexico Rule at issue. See Pina v. Espinoza, 130 N.M. 661, 667, 29 P.3d 1062, 1069 (Ct. App. 2001)("Because the pre-1993 discovery provisions of the federal

---

jurisdictionally infirm cause of action. See United States v. Tippett, 975 F.2d 713, 717 (10th Cir. 1992)("The Fifth Circuit treats consolidated cases as separate when determining whether the district court had jurisdiction to entertain the suits. We assume all circuits would hold similarly that no suit filed independently could escape the jurisdiction requirements of federal question or diversity because it was consolidated with another after filing." (citations omitted)). To treat a consolidated case as a single unit when examining jurisdiction would encourage parties to file complaints in federal court which lack any semblance of jurisdiction, in the hope that they can attach those cases to others that properly invoke diversity or federal-question jurisdiction, thereby eviscerating the notion of federal courts' limited jurisdiction.

rules were substantially similar to New Mexico's current discovery rules, we believe that it is appropriate to look to federal practice under the federal rules for guidance in harmonizing Rule 1-026(B)(1) with Rule 11-504." (citations omitted)); <u>Gallegos by & Through Gallegos v. Southwest Community Health Servs.</u>, 117 N.M. 481, 489, 872 P.2d 899, 907 (Ct. App. 1994)("Cases decided under the [Federal Rules of Civil Procedure] are often persuasive to this Court if they are not in conflict with controlling New Mexico authority and are based on sound logic and policies consistent with the law of this state." (citations omitted)).

In the Thirteenth Judicial District Court for New Mexico, Local Rule 13-405 controls consolidation of cases. Rule 13-405 states: "Motions to consolidate and the cases consolidated for trial shall be heard by the judge assigned to the case bearing the lowest case number. Pleadings filed after consolidation shall contain in the caption the case numbers of each case consolidated."

## LAW ON DIVERSITY JURISDICTION

"For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1), state citizenship is the equivalent of domicile." <u>Crowley v. Glaze</u>, 710 F.2d 676, 678 (10th Cir. 1983). As the Supreme Court of the United States has explained,

> Domicile is, of course, a concept widely used in both federal and state courts for jurisdiction and conflict-of-laws purposes, and its meaning is generally uncontroverted. Domicile is not necessarily synonymous with residence, and one can reside in one place but be domiciled in another. For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.

<u>Mississippi Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30, 48 (1989)(internal quotations and citations omitted). The Supreme Court's "well-established rule" is that "diversity of citizenship is assessed at the time the action is filed." <u>Freeport-McMoRan, Inc. v. K N Energy, Inc.</u>, 498 U.S. 426,

428 (1991)(per curiam)(citations omitted).  As the Tenth Circuit has instructed, "it is more than well-settled that a party's citizenship, i.e., his domicile, must be determined as of the moment the plaintiff's complaint is filed, and events either before or after the filing of the complaint will not defeat citizenship." Hassan v. Allen, 1998 U.S. App. LEXIS 13583, at *17 (10th Cir. June 24, 1998)(citing Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. at 428).  "Residence alone is not the equivalent of citizenship, but the place of residence is prima facie the domicile." State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)(citing Walden v. Broce Construction Co., 357 F.2d 242, 245 (10th Cir. 1966), and Houston v. Astle, 435 F.2d 847, 848 (3d Cir. 1970)).

The Tenth Circuit has recognized a rebuttable presumption "in favor of an established domicile over a newly acquired one." Janis v. Ed Story & Assocs., 1997 U.S. App. LEXIS 23532, at *10 (10th Cir. September 4, 1997)(citing State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d at 519). In Crowley, the Tenth Circuit gave the test for determining when a person has left an old domicile and acquired a new one, thereby rebutting the presumption in favor of an established domicile. See 710 F.2d at 678.  "To effect a change in domicile, two things are indispensable: First, residence in a new domicile, and second, the intention to remain there indefinitely." Id.  "A floating intention to return to a former domicile does not prevent the acquisition of a new domicile." Id. (internal quotations omitted).  A floating intention is indefinite as to the time of one's stay in a new state or the time of one's return to an old residence. See Jones v. Kyle, 190 F.2d 353, 355 (10th Cir. 1951).

"Mere mental fixing of citizenship is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says." Walden v. Broce Constr. Co., 357 F.2d at 245 (10th Cir. 1966)(internal quotations and citations omitted).  "Words may be evidence of a man's intention to establish his domicile at a particular place of residence, but they cannot supply the fact

of his domicile there."  Janis v. Ed Story & Assocs., 1997 U.S. App. LEXIS 23532, at *10-11 (internal quotations and citations omitted).  "[D]eclarations of intention to establish residence in a particular place are entitled to great weight, but should be viewed in light of any motive."  Johnston v. Cordell Nat'l Bank, 421 F.2d 1310, 1312 (10th Cir. 1970)(citation omitted).  A district court may, but is not required to, give credence to statements by a party about his intentions to remain in one state as opposed to another.  Crowley v. Glaze, 710 F.2d at 678 ("Such statements are of course self-serving, but such does not mean that they must be discarded by the trier of the facts, who, on the contrary, *may choose* to give credence to them." (emphasis added)).

## ANALYSIS

The Court will remand to state court the claims from Chaara I for gender discrimination, breach of an employment contract, breach of the covenant of good faith and fair dealing, and defamation.  Section 1447(d) bars review of Judge Black's order remanding those claims and the consolidation of Chaara I and II did not destroy each suit's separate identity.  The Court will not remand Chaara II's claims, for national origin discrimination, retaliation, breach of an employment contract, breach of the covenant of good faith and fair dealing, and defamation, because diversity of citizenship existed when Chaara II was filed.

**I.   SECTION 1447(d) BARS REVIEW OF JUDGE BLACK'S REMAND ORDER.**

This suit is a consolidated action.  Chaara initially filed Chaara I in state court on April 16, 2004.  After the Defendants removed Chaara I to this District on the basis of diversity of citizenship, Judge Black remanded the case to state court upon concluding that Chaara, like several of the Defendants, is a citizen of New Mexico.  See Order of Remand at 1.  Chaara thereafter filed a second suit, which the New Mexico state court consolidated with Chaara I.  The Defendants subsequently

-19-

removed the consolidated action, comprised of <u>Chaara I</u> and <u>II</u>, to this Court.

Chaara argues that, except for the fact that Chaara's partner has moved to Colorado with him, nothing has changed since Judge Black determined that Chaara is domiciled in New Mexico, and that, therefore, diversity is still absent from this case. <u>See</u> Motion to Remand at 2. Chaara lists several facts that, he alleges, point to his continued citizenship in the Land of Enchantment. <u>See</u> <u>id.</u> at 2-3. Chaara urges the Court to accept Judge Black's ruling as the law of the case and leave it undisturbed. <u>See</u> Transcript of Hearing at 51:8-10. Also, Chaara asserts that Judge Black's ruling in <u>Chaara I</u> governs the current action because the consolidated case took <u>Chaara I</u>'s case number. <u>See</u> <u>id.</u> at 55:14-20.

In response, the Defendants argue that diversity existed before Chaara filed <u>Chaara I</u> and <u>II</u> because he had moved to Colorado. <u>See</u> Defendants' Reply Brief in Support of Removal at 5-6; Transcript of Hearing at 52:18-23. The Defendants also contend that, because <u>Chaara I</u> and <u>II</u> were consolidated, the existence of diversity at the time <u>Chaara II</u> was filed renders the consolidated case removable. <u>See</u> <u>id.</u> at 7-8. Finally, the Defendants maintain that events subsequent to <u>Chaara I</u> allow the Defendants to remove pursuant to § 1446(b). <u>See</u> <u>id.</u> at 8-10.

In their briefs and arguments, the parties do not mention § 1447(d). Section 1447(d) mandates that "[a]n order remanding a case to the State court from which it was removed is *not reviewable on appeal or otherwise*" (emphasis added). On August 20, 2004, Judge Black remanded <u>Chaara I</u> to state court after concluding that diversity did not exist. As to <u>Chaara I</u>, the Defendants are asking the Court to review Judge Black's prior remand order. The Defendants have argued that the Court should now find that diversity, in fact, existed when <u>Chaara I</u> was filed, even though Judge Black ruled the opposite. To conclude now that <u>Chaara I</u> satisfied subject-matter jurisdiction when

it was filed, the Court must review whether Judge Black's ruling still stands.  Yet if the Court's review of Judge Black's order falls under § 1447(d)'s strict statutory limitation of review, see Kennedy v. Lubar, 273 F.3d at 1297 (citations omitted), then the Court must not review Judge Black's order sending Chaara I to state court and must not now allow Chaara I to move forward in federal court because of the prior remand to state court.  The Tenth Circuit has ruled that appellate courts are absolutely prohibited from reviewing an order remanding a case to state court for lack of subject-matter jurisdiction, but has not ruled on whether § 1447(d) limits a district court's authority to review or reconsider a remand order.  See id. (discussing only appellate review of remand orders).

The Court concludes that § 1447(d) bars a district court's review of a prior remand order for three reasons.  First, the statutory language of § 1447(d) precludes any review of a district court's remand order, based on subject-matter jurisdiction, whether by an appellate or district court.  Section 1447(d) forbids a court from reviewing a remand order "on appeal or otherwise."  While the statute specifically excludes appellate review, the "otherwise" language indicates an intent to encompass other forms of review within § 1447(d)'s ambit.  A district court's reconsideration of a remand order is necessarily a form of review because it examines whether the remand order is legally and factually correct; if the district court decides that the remand order incorrectly applied the law regarding remand, then the district court would vacate the prior order and substitute it with a more proper order.  Assuming that Congress intended the word "otherwise" to have meaning, the Court believes that the phrase absolutely forbids review of a remand order by a district, as well as an appellate, court.

Second, at least three other Circuits, the First, Fourth, and Eleventh, have also found that § 1447(d) confines a district court's authority to review remand orders.  See First Union Nat'l Bank v. Hall, 123 F.3d at 1377; In re Lowe, 102 F.3d at 734; In re La Providencia Dev. Corp., 406 F.2d

-21-

at 252-53.  As the First Circuit reasoned, "there is no more reason for a district court being able to review its own decision, and revoke the remand, than for an appellate court requiring it to do so." In re La Providencia Dev. Corp., 406 F.2d at 252-53.  The Court agrees that "nothing could be more inclusive than the phrase 'on appeal or otherwise,'" id. at 253, and that  "[i]ndisputably, 'otherwise' in § 1447(d) includes reconsideration by the district court."   In re Lowe, 102 F.3d at 734. Furthermore, the Court cannot find any cases saying the opposite – that § 1447(d) does not apply to review, by a district court, of a remand order.

Finally, the Court believes that the policies underlying § 1447(d) apply equally to appellate and district court review.  As the First Circuit has outlined, the prohibition of review of remand orders stems from the interests of judicial economy, respect for state courts, and comity between federal and state courts.  See In re La Providencia Dev. Corp., 406 F.2d at 252.  The limitation on review serves those ends by preventing a case from "ricochet[ing] back and forth depending upon the most recent determination of a federal court."  Id.  To allow a district court, but not an appellate court, to review its remand orders would undermine these aims because a case could still boomerang back to the district court, after being thrown to state court on remand, upon a later finding by a district court of jurisdiction.  Such a rule would multiply the number of proceedings before federal courts; the rule would also strain relations between the federal and state judiciaries because it would loom over state courts like a dark cloud, constantly threatening to snatch away cases over which state courts have expended scarce judicial resources.

Applying § 1447(d)'s prohibition on review to the remand order in Chaara I, the Court must accept Judge Black's ruling and will not decide anew the basis of jurisdiction in that case.  Regardless whether Judge Black's ruling was correct – an issue on which the Court takes no position – the Court

will abide by Congress' determination that it is better to uphold a prior remand order, even if incorrect, than to risk wasting judicial resources, disrespecting state courts, and endangering federal-state comity.  The Court determines, therefore, that <u>Chaara I</u>, and all of its claims, should be remanded to state court in accordance with Judge Black's order.

The next question facing the Court is: What effect should the consolidation of <u>Chaara I</u> and <u>II</u> have on the Court's decision?  Almost all cases concerning consolidation have determined that separately filed cases retain their separate characters despite consolidation.  See <u>Schnabel v. Lui</u>, 302 F.3d at 1035; 9 Wright & Miller, Federal Practice and Procedure § 2382 n.9.  <u>See also Cella v. Togum Constructeur Ensemleier En Industrie Alimentaire</u>, 173 F.3d at 912; <u>Stacey v. Charles J. Rogers, Inc.</u>, 756 F.2d at 442; <u>McKenzie v. United States</u>, 678 F.2d at 574.  Consolidation is not like a marriage, producing one indissoluble union from two distinct cases.  Instead, consolidation is an artificial link forged by a court for the administrative convenience of the parties; it fails to erase the fact that, underneath consolidation's facade, lie two individual cases.  See <u>Stacey v. Charles J. Rogers, Inc.</u>, 756 F.2d at 442; <u>Cella v. Togum Constructeur Ensemleier En Industrie Alimentaire</u>, 173 F.3d at 912.  Furthermore, the Tenth Circuit has indicated its agreement with the Fifth Circuit that consolidated cases should be treated separately for the purpose of determining jurisdiction.  See <u>United States v. Tippett</u>, 975 F.2d at 717.

In light of the position of a majority of the Circuits, the Court will treat <u>Chaara I</u> and <u>II</u> as two separate actions, joined together only for efficiency of adjudication.  Because Judge Black's order only concerned <u>Chaara I</u>, § 1447(d) does not bar the Court from deciding whether <u>Chaara II</u>, a separate action, possesses subject-matter jurisdiction.  As separate actions, each case must satisfy jurisdiction on its own.  The Court will, therefore, examine whether <u>Chaara II</u> possesses subject-

matter jurisdiction.

Both parties allege that the consolidation by the New Mexico state court of <u>Chaara I</u> and <u>II</u> somehow leads to a different outcome than the one the Court has outlined.  Chaara argues that, under the local rules of the Thirteenth Judicial District Court of New Mexico, which consolidated <u>Chaara I</u> and <u>II</u>, the consolidated action took <u>Chaara I</u>'s case number.  <u>See</u> Transcript of Hearing at 50:22-51:8, 55:14-20.  According to Chaara, the Court's conclusion on <u>Chaara I</u>'s jurisdiction should, therefore, govern <u>Chaara II</u>'s jurisdiction.  <u>See</u> <u>id.</u>

The Defendants' argument is the opposite of Chaara's.  The Defendants maintain that consolidation makes the jurisdictional status of <u>Chaara II</u>, not <u>Chaara I</u>, controlling as to the consolidated action.  <u>See</u> Defendants' Reply Brief in Support of Removal at 7-8.  Because the two cases became one upon consolidation, and one of the two cases was removable (<u>Chaara II</u>), the Defendants assert that the entire consolidated case is removable.  <u>See</u> <u>id.</u>

Even if the Court applied New Mexico law on consolidation, either under the <u>Erie</u> doctrine or through principles of comity and federalism, the Court would still remand <u>Chaara I</u> and determine <u>Chaara II</u>'s jurisdiction anew because the two underlying cases would remain separate actions, in spite of consolidation, under New Mexico law.  First, the text of New Mexico Rule 1-042A, under which New Mexico state courts have the authority to consolidate cases, tracks rule 42(a) verbatim, suggesting that consolidation's effects in New Mexico parallel its effects under the Federal Rules.  Furthermore, New Mexico courts find federal courts' interpretation of the Federal Rules persuasive on the proper construction of the New Mexico Rules, thereby strengthening the Court's conclusion that New Mexico courts would not reach a different conclusion under the New Mexico Rules.  <u>See</u> <u>Pina v. Espinoza</u>, 130 N.M. at 667, 29 P.3d at 1069; <u>Gallegos by & Through Gallegos v. Southwest</u>

-24-

Community Health Servs., 117 N.M. at 489, 872 P.2d at 907.

Second, contrary to Chaara's suggestion, rule 13-405 of the Rules of the District Court of the Thirteenth Judicial District merely states that pleadings filed after a case has been consolidated shall be heard by the judge who is assigned the lowest case number, not that a later-filed case, upon consolidation, merges with the earlier-filed case. Indeed, the rule itself indicates that, even in New Mexico, consolidated cases retain their separate nature because the rule requires that pleadings, filed after consolidation, must bear "the case numbers of each case consolidated." Finally, the Stipulated Order of Consolidation, although stating that the cases are consolidated for "for any and all purposes," mandates that the consolidated case shall be captioned with both case numbers, thereby suggesting that Chaara I and II are still two individual actions consolidated merely for administrative purposes. Stipulated Order of Consolidation at 1. The Court will therefore proceed to determine whether diversity existed when Chaara filed his second lawsuit.

## II.   DIVERSITY OF CITIZENSHIP EXISTED WHEN CHAARA FILED HIS SECOND LAWSUIT BECAUSE HE WAS DOMICILED IN COLORADO.

To invoke diversity jurisdiction in this case, there must be complete diversity of citizenship between the parties such that Chaara is not a citizen of the same state as any of the Defendants. See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d at 1225. Intel Corporation is incorporated under the laws of Delaware and has its principal place of business in California. See Duffy Aff. ¶ 2, at 1. Baglee, Rashap, and Wash are citizens of New Mexico. See Chaara II Complaint ¶¶ 3-5, at 1-2. Chaara argues that diversity does not exist because, like Baglee, Rashap, and Wash, he was a citizen of New Mexico at the time he filed Chaara II. See Motion to Remand at 2-3. The Defendants, however, contend that Chaara established a new domicile in

Colorado before filing the second lawsuit.  See Defendants' Reply Brief in Support of Removal at 5.

For diversity purposes, Chaara is a citizen of the state where he is domiciled.  See Crowley v. Glaze, 710 F.2d at 678.  Domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.  See Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. at 48.  To change his domicile, and thereby rebut the presumption in favor of an established residence over a newly-acquired one, Chaara must reside in a new domicile and intend to remain there indefinitely.  See Crowley v. Glaze, 710 F.2d at 678; Janis v. Ed Story & Assocs., 1997 U.S. App. LEXIS 23532, at *10. The location of Chaara's domicile is measured as of the time he filed suit.  See Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. at 428 (citations omitted).

Chaara was domiciled in Colorado, not New Mexico, when he filed Chaara II on February 10, 2005.  Although he lived in New Mexico for a period of time before launching the second lawsuit, Chaara had established a new domicile in Colorado by the time he filed his national origin and retaliation claims in New Mexico state court.  First, Chaara resided in Colorado when he filed Chaara II because, almost a year before filing suit, Chaara moved to Colorado Springs and began working at a new job.  See Transcript of Hearing at 7:3-13.

Second, Chaara had evinced an intent to remain in Colorado indefinitely before filing suit. His job is a regular, full-time position for an indefinite period.  See Duffy Aff. ¶ 3, at 1.  Chaara has moved his entire immediate family, except for a college-age daughter attending the University of New Mexico, to his new home in Colorado Springs.  See Transcript of Hearing at 10:2-4, 10:15-21, 13:9-11.  Most of his possessions are now in Colorado.  See id. at 17:18-21.

Furthermore, Chaara bought a new house in Colorado Springs which, according to his own admission on his Loan Application and at the evidentiary hearing, he uses as a primary residence. See Uniform Residential Loan Application at 1; Transcript of Hearing at 17:13-17. He also indicated on the Loan Application that he sold his Albuquerque residence. See Uniform Residential Loan Application at 3. Even if he has not sold his Albuquerque residence, he indicated in an email that he intended to sell it. See Email String at 1. Also, he chose the reimbursement option that required that he sell his house.

He told the New Mexico Human Rights Commission that "[w]e're planning on leaving this place [Albuquerque]. We have to move to Colorado Springs, in the hope that I can escape. . . ." Transcript of Proceedings Before the New Mexico Human Rights Commission at 122:8-13. His primary care physician is in Colorado, and he pays Colorado property taxes. See Transcript of Hearing at 13:15-20, 13:23-14:7.

Although Chaara points out that he allegedly still owns a house in Albuquerque, possesses a New Mexico driver's license, owns a vehicle registered in Colorado, and maintains a New Mexico bank account, see Motion to Remand at 2, the facts recited above paint a portrait of a man who has uprooted himself from New Mexico to Colorado by moving himself, his family, and almost all of their belongings to a new house purchased as a primary residence in Colorado. His job is for an indefinite period of time with no commitment of any kind, firm or otherwise, to return to New Mexico. He expressed an intent to the New Mexico Human Rights Commission to leave New Mexico for Colorado.

His affirmative actions in moving, the status of his employment, and his stated intentions overwhelm the small bits of evidence he offers in rebuttal. The above-mentioned evidence therefore

demonstrates an intent to remain in Colorado until some unknown point in the future. As such, the evidence is sufficient for the Defendants to meet their burden that Chaara resided in Colorado, and intended to remain there indefinitely, when he filed Chaara II on February 10, 2005.

Although Chaara states that he has "definite plans" to return to New Mexico and intends to move back to this state, see Transcript of Hearing at 15:4-16:18, he has not spelled out what those plans are. First, the Court is not required to accept, without more, Chaara's mere assertion, without support, that he intends to return. See Crowley v. Glaze, 710 F.2d at 678. The Court is entitled to look at what Chaara has done, as listed above, as opposed to only considering what Chaara says he will do. See Walden v. Broce Constr. Co., 357 F.2d at 245. Chaara's actions, in buying a new primary residence, taking a job for an indefinite duration, and testifying under oath about his desire to leave New Mexico, speak louder than his words in his motion or at the hearing.

Second, Chaara's intention to return to New Mexico appears to be little more than a floating intention, indefinite as the duration of his stay in Colorado and the time of his return to New Mexico. See Jones v. Kyle, 190 F.2d at 355. Chaara allegedly desires to return, but has no idea when or how he will do so. A floating intention, however, cannot prevent the acquisition of a new domicile. See Crowley v. Glaze, 710 F.2d at 678. Chaara's desire to return to New Mexico is similar to that of the plaintiff in Crowley, who expressed a mere "desire" or "hope" to return to Colorado, but was nonetheless deemed to be a citizen of Minnesota because of the indefinite and uncertain nature of his plans to move back. See id. at 678. Chaara therefore was a citizen of Colorado when he filed his second lawsuit. Because none of the Defendants are citizens of Colorado, diversity of citizenship existed when Chaara filed his second lawsuit and the Court may therefore exercise jurisdiction over Chaara II.

Case 1:05-cv-00278-JB-RLP   Document 48   Filed 12/31/05   Page 29 of 29

**IT IS ORDERED** that Plaintiff's Response to Defendants' Notice of Removal and Motion for Remand is granted in part and denied in part.  The Court grants the motion with regard to <u>Chaara v. Intel Corporation</u>,  No. D-1329-CV-04-00376 and remands that case and all claims therein to the Thirteenth Judicial District of New Mexico.  The Court denies the motion with regard to <u>Chaara v. Intel Corporation</u>,  No. D-1329-CV-05-00154 and the claims therein.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Laura J. Ramos
David G. Crum & Associates, P.C.
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Barbara G. Stephenson
Quentin Smith
Gilkey & Stephenson, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendants*